1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10

| | |
|---|---|
| PACIFIC BIOSCIENCE LABORATORIES, INC., | CASE NO. C15-0689JLR |
| Plaintiff, | ORDER |
| v. | |
| HOME SKINOVATIONS, INC., et al., | |
| Defendants. | |

## I.    INTRODUCTION

On November 2, 2015, the court granted the parties' stipulated motion for the entry of a permanent injunction and order of dismissal.  (PI (Dkt. # 18).)  The permanent injunction restrained and enjoined Defendants Home Skinovations, Inc., and Home Skinovations, Ltd. (collectively, "Home Skinovations") from infringing any of the claims of United States Patent No. 7,320,691 ("the '691 Patent") with certain products in the United States.  (*Id.* at 2.)  The court retained jurisdiction over the action.  (*Id.*)

1    Two motions are before the court:  (1) Home Skinovations's motion for

2    clarification of the court's permanent injunction (MFC (Dkt. # 21)); and (2) Plaintiff

3    Pacific Bioscience Laboratories, Inc.'s ("PBL") motion for leave to provide new

4    information in support of its opposition and surreply to Home Skinovations's motion for

5    clarification (MFL (Dkt. # 35)).  The court has considered the motions, the parties'

6    submissions filed in support of and opposition to the motions, the relevant portions of the

7    record, and the applicable law.[1]  Being fully advised,[2] the court DENIES Home

8    Skinovations's motion and DENIES PBL's motion as moot.

9                              **II.    BACKGROUND**

10    On May 1, 2015, PBL filed suit alleging that Home Skinovations directly

11    infringed the '691 Patent.  (Compl. (Dkt. # 1).)  On June 19, 2015, the International Trade

12    Commission ("ITC") instituted Investigation No. 337-TA-959, *In the Matter of Certain*

13    *Electric Skin Care Devices, Brushes and Chargers Therefore, and Kits Containing Same.*

14    (Stay Ord. (Dkt. # 15) at 1.)  On June 29, 2015, the court stayed PBL's lawsuit pursuant

15    to 28 U.S.C. § 1659(a) pending the ITC's final determination in Investigation No.

16    337-TA-959.  (*See id.* at 2-3.)

17    On October 29, 2015, the parties filed a joint motion asking the court to enter a

18    permanent injunction and order of dismissal with prejudice.  (Joint Mot. for PI (Dkt.

19

20    [1] PBL filed a surreply to Home Skinovations's motion seeking to strike certain portions of Home Skinovations's reply as new arguments or facts that should not have been initially raised in a reply memorandum.  (*See* Surreply (Dkt. # 34).)  The court denies PBL's request.

21    [2] No party has request oral argument on either motion, and the court does not consider oral argument to be helpful to its disposition of the motions.  *See* Local Rules W.D. Wash. LCR 7(b)(4).

22

1   # 17).)  The parties stipulated that the entry of the permanent injunction was without

2   admission by Home Skinovations of infringement, liability, or violation of the law, and

3   was solely to settle the dispute between the parties.  (*Id.* at 2.)  On November 2, 2015, the

4   court granted the joint motion and entered a permanent injunction and order of dismissal.

5   (*See* PI.)

6        The permanent injunction restrained and enjoined Home Skinovations from

7   "infringing, contributing to the infringement, or inducing the infringement, of any claims

8   of the '691 Patent, including by making, using, offering to sell and/or selling in the

9   United States and/or importing into the United States an Accused Product or any other

10  product containing elements that are colorable imitations of an Accused Product."  (*Id.* at

11  2.)  The permanent injunction defined "Accused Products" to mean:

12       [T]he Silk'n Sonic, the BellaSonicCleanPlus, replacement brush heads for
         each, and substantially similar products sold or offered for sale in, or
13       imported into, the United States by Home Skinovations that infringe any
         claims of . . . the '691 Patent . . . .

14

15  (*Id.* at 1.)  On June 8, 2016, Home Skinovations filed a sworn statement certifying

    compliance with the permanent injunction.  (Statement (Dkt. # 19).)
16

17       Following entry of the permanent injunction, Home Skinovations redesigned its

18  brush product, which it now calls the Silk'n Pure.  (*See* MFC at 7-10.)  The Silk'n Pure is

19  a unidirectional rotating cosmetics brush.  (*See id.*)  In its motion, Home Skinovations

20  seeks a determination from this court that (1) the Silk'n Pure's unidirectional operation

21  does not satisfy the "bi-directional about a neutral position" claim limitation of the '691

22  Patent, and (2) therefore, the redesigned Silk'n Pure brush is outside the scope of the

ORDER - 3

1    permanent injunction.  (*See id.* at 12; MFC Reply (Dkt. # 32) at 2, 6.)  Home

2    Skinovations states that it has repeatedly asked PBL to confirm that the Silk'n Pure is not

3    covered by the claims of the '691 Patent, but PBL has declined to respond.  (MFC at 10.)

4         Home Skinovations has made conflicting representations to the court concerning

5    the commercial availability of the Silk'n Pure brush in the United States.  In its motion,

6    Home Skinovations states that it has already introduced the Silk'n Pure into the Canadian

7    and European markets without objection by PBL and "is planning to imminently

8    introduce the product commercially into the U.S. market."  (*Id.*)  Home Skinovations

9    maintains, however, that it has only "imported a handful of samples of its redesigned

10   Silk'n Pure product to the U.S. for analysis by its counsel."  (*Id.*)  Despite the foregoing

11   representations, Home Skinovations submitted evidence with its reply memorandum that

12   the redesigned Silk'n Pure brush was already commercially available in the United States

13   at the time Home Skinovations filed its September 15, 2016, motion.  (*See* MFC Reply at

14   3 (citing Bank Decl. (Dkt. # 32-1).)  In its September 30, 2016, reply memorandum,

15   Home Skinovations states that Kohl's Corporation "issued a U.S. purchase order for the

16   Silk'n Pure product in August, 2016."  (*Id.* (citing Bank Decl. ¶ 4).)  Further, to fulfill the

17   order, "Home Skinovations ordered approximately 10,000 units of the Silk'n Pure brush

18   product from its overseas supplier on August 25, 2016."  (*Id.* (citing Bank Decl. ¶ 6).)

19   Indeed, Home Skinovations declares in its reply memorandum that its "redesigned brush

20   product has already been imported into and is commercially available in the U.S.

21   market."  (*Id.*)  The court cannot reconcile Home Skinovations's representations in its

22   motion that it had imported "a handful of samples . . . for analysis by its counsel" and

ORDER - 4

1    was "planning to imminently introduce the product commercially in the U.S. market"

2    (MFC at 10), with the representations in its reply memorandum that the product is

3    already commercially available here (MFC Reply at 3).[3]

4        PBL argues that Home Skinovations is seeking an impermissible advisory opinion

5    that its Silk'n Pure brush does not violate the '691 Patent and that the issue of

6    noninfringement is not properly before the court.  (*See generally* MFC Resp. (Dkt. # 27).)

7    The court now considers Home Skinovations's motion.

8                            **III.    ANALYSIS**

9        A party "subject to an injunction always has the right to ask the court that is

10   administering it whether it applies to conduct in which the person proposes to engage."

11   *Matter of Hendrix*, 986 F.2d 195, 200 (7th Cir. 1993).  To the extent that such a motion

12   for clarification "looks like a request for an 'advisory opinion,' it is one that even a

13   federal court can grant."  *Id.*  However, "[i]t is within the 'sound discretion of the court'

14   whether to grant such a clarification or modification of an injunction if a party 'enter[s]

15   upon transactions which raise doubts as to the applicability of the injunction.'"

16   *Cornucopia Prod., LLC v. Dyson, Inc*., No. CV12-0234-PHX-NVW, 2013 WL

17   12098786, at *1 (D. Ariz. June 20, 2013) (quoting *Regal Knitwear Co. v. N.L.R.B*., 324

18   ────────────
         [3] Home Skinovations argues that PBL misstates the text of Home Skinovations' motion
19   by stating that Home Skinovations "*only* 'imported a handful of samples'" because Home
     Skinovations did not use the word "only" in its motion.  (MFL Resp. (Dkt. # 36) at 3 (quoting
20   Surreply at 1, 2, 3).)  However, the court also interprets Home Skinovations's statement to mean
     that it had only imported a handful of samples and that its redesigned brush was not yet available
21   to consumers in the United States.  (*See* MFC at 10 ("Home Skinovations has imported a handful
     of samples of its redesigned Silk'n Pure product to the U.S. for analysis by its counsel and is
22   planning to imminently introduce the product commercially into the U.S. market.").)  The court
     warns counsel for Home Skinovations that counsel risks losing the court's confidence when they
     parse language so sharply.

ORDER - 5

1   U.S. 9, 15 (1945)) (second alteration in original).  "As a result, courts are always free . . .

2   to clarify inexplicit injunctions in order to avoid unwitting contempts."  *Id.* (citing

3   *Hendrix*, 686 F.2d at 200).

4          Home Skinovations seeks a declaration from the court that the new Silk'n Pure

5   brush is not "substantially similar" to or a "colorable imitation" of the Silk'n Sonic or the

6   BellaSonicCleanPlus and that the Silk'n Pure brush does not infringe the '691 Patent or

7   violate the permanent injunction.  (*See* PI at 1; MTC at 1-2.)  Although the court has the

8   discretion to clarify an injunction and "should provide clarification of any ambiguous

9   language that could cause unwitting contempts," *Cornucopia*, 2013 WL 12098786, at *2,

10  such clarification is unwarranted here.  First, Home Skinovations has not pointed to any

11  language in the permanent injunction that is ambiguous or needs clarification, and the

12  court notes that Home Skinovations participated in jointly drafting the permanent

13  injunction with PBL.  (*See* Joint Mot. for PI.)  Clarification is unnecessary because Home

14  Skinovations has failed to demonstrate that the injunction is unclear.

15         Instead of clarification, Home Skinovations seeks a declaration that the Silk'n

16  Pure brush does not infringe the '691 Patent or violate the permanent injunction.  Such a

17  declaration would require the court to carefully evaluate the redesigned brush.  "That

18  kind of careful evaluation [comparing product design] should not be performed under the

19  guise of clarifying an injunction that is already clear." *Cornucopia*, 2013 WL 12098786,

20  at *2.  Indeed, non-infringement motions are dispositive motions that should be advanced

21  based on a fully developed record.  *See Etagz, Inc. v. Quicksilver, Inc.*, No. SACV

22  10-0300, 2012 WL 2135497, at *3 (C.D. Cal. June 11, 2012) (denying a summary

ORDER - 6

1    judgment motion as "premature," and noting that "[n]umerous courts have held that the

2    inquiry of whether two claims are identical should not occur until after formal claim

3    construction"); *Stratasys, Inc. v. Microboards Tech., LLC*, No. 13-3228 (DWF/TNL),

4    2014 WL 5438396, at *2 (D. Minn. Oct. 22, 2014) (denying as premature the defendant's

5    motion for summary judgment on the issue of infringement filed prior to claim

6    construction proceedings).  Although Home Skinovations submits evidence in support of

7    its position that Silk'n Pure brush does not operate "bi-directionally" (*see, e.g.*, Levi

8    Decl. (Dkt. # 21-2)), the court finds that the present record falls short of what is

9    ordinarily required when considering whether a device like the Silk'n Pure brush

10   infringes a patent.  The court agrees with PBL that Home Skinovations's "motion for

11   clarification" of the permanent injunction is a maladroit vehicle to drive the issue of

12   non-infringement to resolution.

13          If, as Home Skinovations initially averred, the product is not yet commercially

14   available in the United States (*see* MTC at 10), then judicial economy is not served by

15   resolving the issues presented in the motion at this time.  If Home Skinovations "has not

16   yet 'enter[ed] upon transactions which raise doubts as to the applicability of the

17   injunction,'" then it cannot "be held in contempt 'until after a judicial hearing' in which

18   the Court could determine whether a new design violates the . . . injunction 'on a concrete

19   set of facts.'"  *See Cornucopia*, 2013 WL 12098786, at *2 (quoting *Regal Knitwear*, 324

20   U.S. at 15-16) (alterations in original).  Yet, there are a number of contingencies that

21   would obviate the need for such a hearing.  First, PBL may simply decide not to bring a

22   motion for contempt under the permanent injunction.  Alternatively, PBL may determine

that the redesigned brush infringes its intellectual property in a way that does not violate

the injunction.  Indeed, PBL might choose to proceed against the new design in an

entirely separate infringement proceeding.  Further, the court might determine, due to the

complexities of infringement analysis, that a contempt proceeding is not an appropriate

forum for deciding the infringement issue and that the matter should be resolved in a

separate infringement action.  *See Additive Controls & Measurement Sys. v. Flowdata,*

*Inc.*, 154 F.3d 1345, 1349 (Fed. Cir. 1998) (citing *KSM Fastening Sys. v. H.A. Jones Co.*,

776 F.2d 1522, 1530-32 (Fed. Cir. 1985) ("That decision turns on a comparison between

the original infringing product and the redesigned device.  If the differences are such that

'substantial open issues' of infringement are raised by the new device, then contempt

proceedings are inappropriate.")).  Any of these events would render an in-depth analysis

of the new product's design superfluous at this stage.

On the other hand, if the redesigned brush is already commercially available in

the United States, as Home Skinovations represents in its reply memorandum (*see* MTC

Reply at 3), then Home Skinovations's motion is moot.  Although a party "always has

the right to ask the court . . . whether [an injunction] applies to conduct in which the

person proposes to engage," *Matter of Hendrix*, 986 F.2d at 200, Home Skinovations

would no longer be seeking "clarification" of the permanent injunction to advise

whether hypothetical future conduct would violate the permanent injunction.  Rather,

Home Skinovations appears to have already engaged in the potentially wrongful

conduct.  Thus, Home Skinovations does not seek to "avoid unwitting contempts,"

*Cornucopia*, 2013 WL 12098786, at *1 (citing *Hendrix*, 686 F.2d at 200), but rather

1   seeks a declaration from the court that its past conduct is not in violation of the

2   permanent injunction.  The court declines to resolve the infringement issues presented

3   under the guise of a motion for clarification to "avoid unwitting contempts" when

4   Home Skinovations has failed to demonstrate that the injunction is ambiguous and has

5   apparently already engaged in the conduct at issue.

6                           **IV.    CONCLUSION**

7           Based on the foregoing analysis, the court DENIES Home Skinovations's motion

8   for clarification of the permanent injunction (Dkt. # 21).  In addition, because the court

9   resolved Home Skinovations' motion in PBL's favor without resort to the additional

10  information PBL sought to provide, the court DENIES as moot PBL's motion for leave to

11  provide new information (Dkt. # 35).

12          Dated this 30th day of March, 2017.

13

14

15          JAMES L. ROBART
            United States District Judge

16

17

18

19

20

21

22